UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
GEOFFREY T. MOTT,                                        Index No.:   21-1949

                Plaintiff,                          **COMPLAINT**

        -against-

JOSE GONCALVES and GONCALVES
CONSTRUCTION CORPORATION,

             Defendants.
------------------------------------------------------------------X

Plaintiff Geoffrey T. Mott, ("Mott"), by his attorneys, Stagg Wabnik Law Group LLP, as and for his Complaint against defendants Jose Goncalves ("Goncalves") and Goncalves Construction Corporation ("GCC" and collectively "defendants"), alleges upon information and belief:

## NATURE OF THE ACTION

1.      This is a civil action arising under the laws of the United States of America, including the Resource Conservation and Recovery Act ("RCRA"), and the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, the Federal Torts Claim Act, 28 U.S.C. § 1346, the laws of the State of New York, including the New York Environmental Conservation Law ("ECL") and common law, seeking declaratory relief, cost recovery, injunctive relief, damages and attorneys' fees and costs for the defendants' intentional, reckless or negligent contamination of Mott's property located at 51 Green Meadow Lane, Huntington, New York (the Property").

2.      Mott has incurred and will continue to incur costs and expenses due to Goncalves's illegal dumping of hazardous materials at the Property without Mott's permission or knowledge. To hide his misconduct, Goncalves repeatedly misrepresented the nature of the materials and concealed that the materials were hazardous and illegal.

3.      Due to Goncalves's fraudulent representations and illegal dumping, Mott has been subject to health risks, enforcement action, fines and penalties, surprise investigations by armed law enforcement and a loss of use and devaluation of his property.

4.      Upon information and belief, Goncalves's illegal dumping appears to have been substantially similar to and may have been connected to the highly organized dumping scheme that gave rise to "Operation Pay Dirt," a multi-agency investigation that resulted in charges against thirty individuals and nine corporations, including Anthony Grazio, who ultimately pled guilty and was incarcerated.

## THE PARTIES

5.      Mott is an individual who owns and resides at the Property, an attorney, and a member of the New York and New Jersey Bars.

6.      Upon information and belief, GCC is a New York corporation with a principal place of business located at 1005 Bowling Green, Westbury, NY 11590.

7.      Upon information and belief, Goncalves is the principal and owner of GCC, and resides in Nassau County, New York.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1331, 42 U.S.C. 6901, 42 U.S.C. 9613(b) and 28 U.S.C. 2201, Articles 27 and 37 of the ECL, and 28 USC 1346.

9.      Venue is proper in this Court pursuant to CERCLA § 113(b), 42 U.S.C. § 9613(b), RCRA § 7002, 42 U.S.C. § 6972(a), CWA § 505, 22 U.S.C. § 1365(a) and 28 U.S.C. § 1391(b) because the actual and threatened endangerments, releases, injuries, and damages  at issue are taking place and have taken place in this district.

## FACTUAL BACKGROUND

10.     Goncalves is a licensed contractor and sole owner of GCC.

11.     In or about 2015, Mott contacted Goncalves to discuss possible masonry work (the "Work") around the pool at his home located at the Property.

12.     Goncalves performed the Work but also used the Property as a dumping ground to save himself the cost of legally dispensing with hazardous substances (the "Hazardous Substances").

13.      For approximately two years, Goncalves dumped dozens of truckloads of Hazardous Substances at the Property.

14.     The Hazardous Substances contained, among other things, chlorane, a chemical listed as a hazardous substance under 40 C.F.R Part 302.4.

15.     Because Mott only authorized GCC to perform masonry work, Mott was alarmed when he saw Goncalves dumping truckloads of material on the Property.

16.     Mott immediately questioned whether the material was clean and legal.

17.     Throughout the period in which Goncalves dumped the material, he repeatedly misrepresented to Mott that the material was clean and legal and that as a licensed contractor he was authorized to dump the material at the Property.

18.     Each time Goncalves dumped material, he covered it with what appeared to be clean soil.

19.     One morning, Mott was awakened by armed law enforcement officers from the New York State Department of Environmental Conservation, Division of Law Enforcement (the "DEC"), who claimed that the material was illegal.

20.     Mott welcomed the DEC onto the Property and advised the DEC that he had nothing to hide and would fully cooperate.

21.     The DEC subsequently alleged that Mott was in violation of New York State Law for operating a solid waste management facility without a permit.

22.     On May 21, 2018, the Division of Code Enforcement of the Town of Huntington (the "Town"), summoned Mott to appear at the Third District Court in Huntington, New York.

23.     The Town alleged Mott violated Chapter 87, Section 84 of the Huntington Town Code that mandates a permit for the grading of land.

24.     On August 29, 2018, defendants provided a voluntary statement to the DEC admitting to dumping illegal contaminants at the Property, but that statement falsely represented that Mott authorized defendants' conduct.

25.     On November 27, 2018, the DEC demanded a monetary penalty for operating a solid waste management facility.

26.     On December 18, 2019, the Town required that Mott pay a minimum fine of $250 and obtain a regrading permit and certificate to legalize regrading.

27.     On or about February 19, 2020, Mott paid $250 to the Town.

28.     The cost to Mott to obtain a regrading permit, which first requires that Mott employ an architect to submit a regrading plan to the Town, will cost a minimum of $10,000.

29.     As a result of defendants' fraud and illegal dumping, Mott: (1) has been subject to liability from the Town and the DEC and must remediate the Property; (2) must hire an architect

4

to submit a regrading plan to the Town; (3) must obtain a regrading permit from the Town; (4) must hire a contractor to remove the Hazardous Substances and regrade the Property; and (5) has incurred attorney's fees and costs.

30.     Goncalves directed GCC in a tortious, fraudulent and illegal manner and defrauded Mott.

31.     Goncalves exercised complete dominion and control over GCC to further his own personal interests.

32.     Goncalves personally supervised, participated in and conducted the wrongful conduct that gives rise to Mott's damages.

## AS AND FOR A FIRST CLAIM AGAINST DEFENDANTS
### (Fraudulent Misrepresentation)

33.     Mott recites and realleges the allegations in the preceding paragraphs as if fully set forth herein.

34.     On or about July 15, 2015, Mott repeatedly asked Goncalves whether the Hazardous Substances were clean and legal.

35.     Goncalves falsely represented to Mott that the Hazardous Substances were clean and legal.

36.     Goncalves's representations to Mott were materially false and made by Goncalves with the intent to deceive Mott.

37.     Mott reasonably relied on Goncalves's representations.

38.     As a result of the foregoing, Mott has been damaged in an amount to be determined at trial.

39.     Defendants' actions were willful, wanton, outrageous and harmful to Mott and the public, warranting an award of punitive damages.

**AS AND FOR A SECOND CLAIM AGAINST DEFENDANTS**
**(Violation of the Resource Conservation and Recovery Act)**

40.     Mott repeats and realleges the allegations in the preceding paragraphs as though fully set forth herein.

41.     The contamination of the Property described above presents an imminent and substantial endangerment to human health and the environment.

42.     Defendants had notice of the endangerment no later than August 29, 2018, when the DEC obtained a voluntary statement from defendants.

43.     The citizen suit provision of the RCRA allows any "person" to commence an action "against any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the Eleventh Amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment. . . ." 42 U.S.C. § 6972(a)(1)(B).

44.     Mott is a "person" entitled to bring suit under the RCRA.

45.     Pursuant to 42 U.S.C. § 6903 (15), defendants are "persons" and subject to the citizen suit provisions of the RCRA, 42 U.S.C. § 6972.

46.     The Hazardous Substances are "solid wastes," as defined in 42 U.S.C. § 6903(27), because it contains discarded material and resulted in the contamination of the Property

47.     The Hazardous Substances are "hazardous wastes," as defined in 42 U.S.C. § 6903(5), because it can "cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness" and "pose a substantial present or potential hazard to human health or the environment" and because it has been "improperly treated, stored, transported, or disposed of, or otherwise managed."

48.     Defendants were engaged in "activity resulting . . . in the disposal or management of solid waste or hazardous waste" and are therefore required to comply with the requirements of the RCRA, pursuant to 42 U.S.C. § 6961.

49.     As described above, defendants are a "past or present generator, past or present transporter, or past or present owner of operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste," 42 U.S.C. § 6972(a), which resulted in the contamination of the Property.

50.     This contamination presents or may present an imminent and substantial endangerment to health or the environment, including a continuing threat to the health of Mott, the public and to the environment.

51.     This Court should therefore issue an injunction, pursuant to 42 U.S.C. § 6972(a), requiring that defendants immediately remediate the Property.

52.     This Court should also award the Mott the costs of this litigation, including reasonable attorney and expert witness fees, pursuant to 42 U.S.C. § 6972(e).

## AS AND FOR A THIRD CLAIM AGAINST DEFENDANTS
**(Cost Recovery Under CERCLA § 107(a) – Declaratory Judgment for Arranger Liability)**

53.     Mott repeats and realleges the allegations in the preceding paragraphs as though fully set forth herein.

54.     Under CERCLA § 107(a)(3), 42 U.S.C.  § 9607(a)(3), persons who arranged for disposal or treatment of hazardous substances are liable for necessary costs of responding to a release or threatened release of hazardous substances incurred by any other person consistent with the NCP.

55.     The Property is a site within the meaning of CERCLA § 101(9), 42 U.S.C. § 9601(9).

56.     Constituents found in the soil at the Property, including but not limited to the Hazardous Substances, are "hazardous substances" within the meaning of CERCLA § 101(14), 42 U.S.C. § 9601(14).

57.     The Hazardous Substances have been disposed of and released into the environment within the meaning of CERCLA §§ 101(14) & (22), 42 U.S.C. §§ (14) & (22) since at least 2017.

58.     Mott has undertaken, and will continue to undertake, investigations and a response action in connection with the Property in response to releases of Hazardous Substances and has incurred and will continue to incur necessary costs of response consistent with the NCP.

59.     The defendants are liable for response costs incurred by Mott for response, removal, remediation and cleanup under CERCLA § 107(a)(3), 42 U.S.C. §§ 9607(a)(3), 9620(a)(4) because they are persons who "arranged for disposal or treatment" of the Hazardous Substances at the Property.

60.    An actual controversy exists under 28 U.S.C. § 2201 among the parties stemming from the cost of remediating the Property and defendants' refusal to do so.

61.    Mott is therefore entitled to a declaratory judgment that defendants are liable for necessary future costs of investigation and cleanup consistent with the NCP in subsequent actions for further response costs, pursuant to CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2).

### AS AND FOR A FOURTH CLAIM AGAINST DEFENDANTS
**(Cost Recovery Under CERCLA § 107(a)**
**Declaratory Judgment for Transporter Liability)**

62.    Mott repeats and realleges the allegations in the preceding paragraphs as though fully set forth herein.

63.    Under CERCLA § 107(a)(4), 42 U.S.C. § 9607(a)(4), transporters who selected disposal or treatment sites are liable for necessary costs of responding to a release or threatened release of hazardous substances incurred by any other person consistent with the NCP.

64.    The Property is a site within the meaning of CERCLA § 101(9), 42 U.S.C. § 9601(9).

65.    Constituents found in the soil at the Property, including the Hazardous Substances, are "hazardous substances" within the meaning of CERCLA § 101(14), 42 U.S.C. § 9601(14).

66.    The Hazardous Substances have been disposed of and released into the environment within the meaning of CERCLA §§ 101(14) & (22), 42 U.S.C. §§ (14) & (22) since at least 2017.

67.    Mott has undertaken, and will continue to undertake, investigations and a response action in connection with the Property in response to releases or threatened releases of the Hazardous Substances and has incurred and will continue to incur necessary costs of response consistent with the NCP.

68.     Defendants are liable for response costs incurred by Mott for cleanup under CERCLA § 107(a)(4), 42 U.S.C. §§ 9607(a)(4), 9620(a)(4) because they are persons who "transported or who selected disposal or treatment sites" for the disposal of the Hazardous Substances to the Property.

69.     An actual controversy exists under 28 U.S.C. § 2201 stemming from the cost of remediating the Property and the defendants' refusal to do so.

70.     Mott is therefore entitled to a declaratory judgment that defendants are liable for necessary future costs of investigation and cleanup consistent with the NCP in subsequent actions for further response costs, pursuant to CERCLA § 113(g)(2), 42 U.S.C. § 9613(g)(2).

## AS AND FOR A FIFTH CLAIM AGAINST DEFENDANTS
### (Money Judgment for Past Response Costs)

71.     Mott repeats and realleges the allegations in the preceding paragraphs as though fully set forth herein.

72.     Mott has incurred response costs consistent with the NCP in connection with the Property.

73.     Response costs incurred by Mott include the costs of investigation, environmental sampling and analysis, and coordinating with the DEC.

74.     Defendants are liable to Mott for all such costs pursuant to CERCLA § 107, 42 U.S.C. § 9607.

## AS AND FOR A SIXTH CLAIM AGAINST DEFENDANTS
### (Violation of New York Environmental Conservation Law)

75.     Mott repeats and realleges the allegations in the prior paragraphs as though fully set forth herein.

76.     Pursuant to ECL § 37-0107, "no person shall store or release to the environment substances hazardous or acutely hazardous to public health, safety or the environment in contravention of rules and regulations promulgated pursuant hereto.

77.     Defendants, through their actions as described above, have stored or released the Hazardous Substances into the environment, including but not limited to the Property.

78.     The Hazardous Substances are hazardous or acutely hazardous to public health, safety or the environment.

79.     Defendants' actions are in contravention of the ECL.

80.     As a proximate result of the actions of defendants, Mott has incurred and will continue to incur damages, including cleanup and remediation costs.

81.     Accordingly, the defendants are liable to Mott for his damages proximately caused by such actions, including damages to the Property and are responsible for investigation, cleanup, and removal of the contamination.

## AS AND FOR A SEVENTH CLAIM AGAINST DEFENDANTS
### (Negligence)

82.     Mott repeats and realleges the allegations in the prior paragraphs as though fully set forth herein.

83.     Defendants owed and still owe a duty to Mott to properly and carefully handle the Hazardous Substances, and not to permit or allow Hazardous Substances to contaminate the Property.

84.     Defendants also owed and still owe a duty to Mott to promptly and responsibly respond to known releases of contaminants in a manner which would prevent exposure, and otherwise protect Mott from contamination and resulting impacts.

11

85.     Defendants acted unreasonably and negligently and breached those duties by their negligent and reckless acts and omissions by the improper release and disposal of the Hazardous Substances, by the failure to properly handle, dispose of, contain and abate the Hazardous Substances, and by their failure to promptly and effectively investigate and address the contamination.

86.     Defendants also breached their duty to timely warn Mott of the risk of the contamination and the risk of harm due to the presence of the contamination.

87.     Defendants had knowledge of the dangers of the Hazardous Substances and failed to timely notify or take any action with respect to them.

88.     These breaches of duties to Mott are continuing and have proximately caused substantial injury and damage to Mott, including, but not limited to, injury in the form of damages to the Property, all due to the actual presence of the contamination.

89.     As a result of these breaches, Mott is required to undertake remediation.

90.     Accordingly, defendants are liable to Mott for his damages proximately caused by such negligence and recklessness, including damages to the Property, and are responsible for investigation, cleanup, and removal of the contamination.

91.     Further, this Court should issue an injunction requiring the defendants to immediately remove all sources of Hazardous Substances and remediate the Property.

92.     The damage done to the Property requires remedial action to eliminate the damage.

### AS AND FOR AN EIGHTH CLAIM AGAINST DEFENDANTS
### (Abnormally Dangerous Activity)

93.     Mott repeats and realleges the allegations in the prior paragraphs as though fully set forth herein.

12

94. Use, storage and disposal of Hazardous Substances and leaving them in an unremediated, unmonitored, unreported and unsecured condition, is an abnormally dangerous activity.

95. Defendants engaged in abnormally dangerous activities by the manner in which they used, stored and disposed of Hazardous Substances at the Property, which: (a) created a high degree of risk of harm to others, and particularly to Mott, whose property has been adversely affected by the contamination; (b) created a risk involving a likelihood that the harm threatened by the activities of defendants would be great; (c) created a risk of harm that could not be eliminated by reasonable care; (d) were not a matter of common usage; (e) were inappropriate to the place that they were being carried on, which imposed an unusual and extraordinary risk of harm to Mott.

96. The risks posed by defendants' conduct are such as give rise to an absolute duty to Mott.

97. As a direct and proximate result of the conduct of defendants in engaging in the abnormally dangerous activities alleged above, Hazardous Substances disposed of at the Property continue to exist under and around the Property

98. The harm sustained by Mott is exactly the kind of harm posed by defendants, the possibility of which made the activities of defendants abnormally dangerous.

99. By reason of these abnormally dangerous activities, the defendants are liable to Mott for his damages proximately caused by such negligence and recklessness.

100. Further, this Court should issue an injunction requiring defendants to immediately remediate the Property.

## AS AND FOR A NINTH CLAIM AGAINST DEFENDANTS
### (Trespass)

101.    Mott repeats and realleges the allegations in the prior paragraphs as though fully set forth herein.

102.    Defendants, by their intentional acts and omissions caused contamination at the Property.

103.    The contamination was the inevitable result of defendants' intentional acts and omissions.

104.    Defendants, by their acts and omissions, have interfered with the rights of Mott to exclusive possession of the Property.

105.    Accordingly, defendants are liable, by reason of this trespass, to Mott for his damages proximately caused by such trespass and are responsible for cleanup and removal of the contamination.

106.    Further, this Court should issue an injunction requiring defendants to remediate the Property.

## AS AND FOR A TENTH CLAIM AGAINST DEFENDANTS
### (Equitable or Implied Indemnification)

107.    Mott repeats and realleges the allegations in the prior paragraphs as though fully set forth herein.

108.    Defendants had a non-delegable duty to Mott and the public to prevent, clean up, or ensure against the contamination of the Property and to prevent the discharge of the Hazardous Substances into the Property.

109.    As a result of the breach of this duty by defendants, the defendants are responsible for the Mott's expenses and damages in investigation, remediation, cleanup, and removal of, and response to the contamination.

110.    The defendants should, in equity, indemnify Mott for his expenses, costs and damages.

### AS AND FOR AN ELEVENTH CLAIM AGAINST DEFENDANTS
### (Restitution)

111.    Mott repeats and realleges the allegations in the preceding paragraphs as though fully set forth herein.

112.    It would be against equity and good conscience to permit the defendants to pass the burden of cleaning up the contamination to Mott, and to use the Property as a dumping ground, free of any responsibility for investigation, remediation, cleanup and removal of, and response to, the contamination.

113.    Therefore, defendants should make restitution to Mott for all of his expenses, costs and damages, including attorneys' fees and costs incurred in defending himself.

### AS AND FOR A TWELFTH CLAIM AGAINST GONCALVES
### (Slander)

114.    Mott repeats and realleges the allegations in the preceding paragraphs as though fully set forth herein.

115.    As set forth in paragraph 24, Goncalves made statements to the DEC alleging that Mott engaged in unethical and illegal behavior and attacked Mott's character, honesty and professional integrity.

116.    The statements that were defamatory are that Mott authorized defendants to engage in illegal dumping.

117.    The defamatory statements were made on or about August 29, 2018.

118.    Goncalves knew or reasonably should have known that the statements were false.

119.    Goncalves intended for his statements to refer to Mott.

120.    These defamatory statements discredit Mott in the conduct of his business, occupation and profession and lead the average person to form a bad opinion of Mott.

121.    Goncalves's defamatory statements are slanderous per se because they falsely charge Mott with serial fraudulent and unethical conduct and tend to injure, disparage and disgrace Mott in his profession as an attorney.

122.    As a result, Mott has been injured in an amount to be determined at trial.

**WHEREFORE**, Mott respectfully requests that this Court grant judgment in his favor against defendants in an amount to be determined at trial, plus interest, punitive damages, and attorneys' fees, together with the costs and disbursements of this action and issue an injunction ordering that defendants must remediate the Property, at their sole cost, and grant plaintiff such other and further relief and this Court deems just and proper.

Dated:  Garden City, New York
         April 9, 2021

                              Stagg Wabnik Law Group LLP


                              By:____/s/ Andrew Kazin_____
                                      Andrew Kazin
                                      *Attorneys for Plaintiff*
                                      *Geoffrey T. Mott*
                                      401 Franklin Avenue, Suite 300
                                      Garden City, New York 11530
                                      (516) 812-4500

TO:   Louis L. Martins, Esq.
Martins Law Firm, P.C.
*Attorney for Defendants*
321 Willis Avenue, Suite 1
Mineola, NY 11501
(516) 248-5027